**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

YOYA'S MARKET *et al.*,

    Plaintiffs,

v.                                                                                              Civ. No. 19-910 JAP/CG

UNITED STATES OF AMERICA,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

This case involves a challenge to the United States Department of Agriculture's ("USDA") administrative decision to permanently disqualify Plaintiff Yoya's Market ("Yoya's") from participating in the federal Supplemental Nutrition Assistance Program ("SNAP"). *See* COMPLAINT, Doc. 1. In May 2019, the USDA permanently disqualified Yoya's from SNAP after concluding that trafficking[1] violations occurred at Yoya's between April and December 2018. *See* Administrative Record[2] ("AR") 153–55, 189–90. Plaintiffs[3] have not challenged the USDA's finding that trafficking violations occurred. *See* AR 167; *see also* JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN, Doc. 13 at 1. Instead, they challenge the USDA's decision

---

[1] "Trafficking" under the Food Stamp Act is defined, in relevant part, as "[t]he buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards . . . for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone[.]" 7 C.F.R. § 271.2.

[2] The Administrative Record is lodged at Doc. 12.

[3] This lawsuit was brought by Yoya's Market and "Alma Villezcas, as manager[.]" *See* COMPLAINT, Doc. 1. The owners of Yoya's, Salvador and Gloria Gutierrez, authorized Ms. Villezcas, who identified herself as Yoya's "Accountant/Manager," AR 206, "to represent us and to receive or send information regarding Yoya's Market" when they first began communicating with USDA in April 2019. *See* AR 172. It appears that Ms. Villezcas may also serve as a translator for Mr. and Mrs. Gutierrez. *See* AR 174 (explaining that "[r]etailer contacted FNS in the presence of their translator/accountant"), 189 (addressing the USDA's May 21, 2019 letter to "Alma Villezcas, Translator").

1

to permanently disqualify Yoya's from participating in SNAP rather than impose a statutorily authorized civil money penalty[4] ("CMP") in lieu of disqualification. *See* Doc. 1 at 8–10.

Currently before the Court are briefs the parties filed in accordance with a briefing schedule, agreed to by the parties, under which Plaintiffs were ordered to file an opening brief, the United States was ordered to respond, and Plaintiffs were given an opportunity to file a reply. *See* CLERK'S MINUTES, Doc. 15; ORDER SETTING BRIEFING SCHEDULE, Doc. 16; Plaintiffs' NOTICE OF MOTION, Doc. 20, and accompanying MEMORANDUM OF LAW, POINTS AND AUTHORITIES, Doc. 21 (collectively "Motion"); DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO CHALLENGE ADMINISTRATIVE DECISION (DOC. 20), Doc. 22; Plaintiffs' MEMORANDUM OF LAW IN REPLY, Doc. 25. Because the Court concludes that this was not the proper procedure to use in this case and that this matter is not currently postured for a ruling on the merits that each party seeks, the Court will deny the Motion without prejudice and order that this case proceed as described herein.

## BACKGROUND

Yoya's is a convenience store located in Deming, New Mexico, owned by Salvador and Gloria Gutierrez. AR 001, 032, 167. The USDA first approved Yoya's as a SNAP-authorized store in February 2012, *see* AR 022, and reauthorized Yoya's to continue participating in SNAP in 2017, *see* AR 003, 031–35. In April 2019, the Food and Nutrition Services ("FNS") division of the USDA sent a letter to Yoya's, charging it with trafficking in food stamps in violation of SNAP regulations. AR 153–55. The charge letter informed Yoya's that it had the right to respond to the charge, including the right to provide information, an explanation, or evidence regarding the

---

[4] The Court recognizes that this term was changed to "civil penalty" in 2008, *see* Pub. L. 110-234, § 4132, U.S. Code Congressional & Admin. News ("U.S.C.C.A.N.") 112 Stat. 1114–15, but elects to adopt the term the parties use.

charge, within ten days of receiving the letter. AR 153–55. The charge letter further informed Yoya's that if it wished to seek imposition of the CMP in lieu of permanent disqualification, it must provide "documentation" within ten days showing how it met the criteria set forth in the SNAP regulations regarding eligibility for the CMP. *Id.*

Mr. and Mrs. Gutierrez responded by submitting a letter in which they asserted that the trafficking violations were committed by "some dis-honest [sic] employees" whom they had already fired "for other reasons[.]" AR 167. They did not challenge the charge of trafficking but asked for "leniency" and requested the CMP in lieu of permanent disqualification. *Id.* They stated that "employees have been trained on policies and processes of SNAP or food stamps," *id.*, and enclosed three pages of documents as proof of training, *see* AR 168–70.

In May 2019, FNS issued its determination letter, in which it found that (1) "the violations cited in our charge letter occurred at your firm[,]" and (2) Yoya's was "not eligible for the CMP because [it] failed to submit sufficient evidence to demonstrate that [it] had established and implemented an effective compliance policy and program to prevent violations of [SNAP]." AR 189. On August 12, 2019, Yoya's filed a formal request for administrative review of FNS's decision and submitted additional documents in support of its request. *See* AR 201–4. Relying on both its initial submission in April 2019 and the additional evidence it provided in August 2019, Yoya's argued to Administrative Review Officer ("ARO") Ronald Gwinn that it met the requirements for receiving a CMP in lieu of permanent disqualification and asked for imposition of a CMP. *See id.*

On August 21, 2019, ARO Gwinn issued the USDA's Final Agency Decision ("FAD"), sustaining as "appropriate" the agency's decision to permanently disqualify Yoya's from participating in SNAP. *See* AR 220–30. ARO Gwinn found that the documentation Yoya's

submitted did not constitute "substantial evidence" that it had both (1) an effective compliance policy and program, and (2) an effective personnel training program to qualify for the CMP in lieu of permanent disqualification. *See* AR 227–28.

Plaintiffs then filed this lawsuit challenging the USDA's decision to permanently disqualify Yoya's from participating in SNAP. *See* Doc. 1. Plaintiffs contend that they "have clearly demonstrated their entitlement to a civil monetary penalty in lieu of disqualification[,]" *id.* at ¶ 55, and request review of the USDA's contrary determination, *id.* at 8–10.

### THE SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM

The purpose of SNAP is to alleviate hunger and malnutrition in low-income households. *See* 7 U.S.C. § 2011 (stating that "a supplemental nutrition assistance program is herein authorized which will permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation"). The federal government administers the program by providing benefits to eligible households to be used "to purchase food from retail food stores which have been approved for participation in the supplemental nutrition assistance program." 7 U.S.C. § 2013(a). Retail food stores wishing to participate in SNAP must apply and be authorized to accept and redeem benefits. *See* 7 U.S.C. § 2018(a)(1)(A). An authorized retail food store that is found to have violated any provision of the Act or regulations promulgated thereunder may be (a) disqualified from participating in the program, either temporarily or permanently, (b) assessed a civil penalty, or (c) both, depending on the number of previous violations and/or the type of violation found. *See* 7 U.S.C. § 2021(a)(1), (b).

The penalty for committing a trafficking violation, even a first occurrence, is permanent disqualification,

> except that the Secretary shall have the discretion to impose a civil penalty of up to $20,000 for each violation . . . in lieu of disqualification . . . if the Secretary determines that there is substantial evidence that such store . . . had an effective policy and program in effect to prevent violations of the chapter and the regulations, including evidence that—
>
>> (i) the ownership of the store . . . was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation; and
>>
>> (ii)(I) the management of the store . . . was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation; or
>>
>> (II) the management was aware of, approved of, benefited from, or was involved in the conduct of no more than 1 previous violation by the store[.]

7 U.S.C. § 2021(b)(3)(B). The appropriate FNS regional office is authorized to determine whether to impose a sanction of permanent disqualification or a CMP in lieu thereof. *See* 7 C.F.R. § 278.6(a)–(c). Any firm aggrieved by FNS's decision may "file a written request for an opportunity to submit information in support of its position to such person or persons as the regulations may designate" and will receive a review by the designated person or persons upon such request. 7 U.S.C. § 2023(a)(3), (5). The designated person's decision is considered the Secretary's final determination from which judicial review may be sought. 7 U.S.C. § 2023(a)(5).

## JUDICIAL REVIEW OF THE SECRETARY'S CHOICE OF SANCTION

Under 7 U.S.C. § 2023, a retail food store that is aggrieved by a final determination of the Secretary of the USDA may obtain judicial review "by filing a complaint against the United States . . . , requesting the court to set aside such determination." 7 U.S.C. § 2023(a)(13). "The suit in the United States district court . . . shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action, except that judicial review of determinations regarding claims made pursuant to section 2025(c) of this title shall be a review on the administrative record." 7 U.S.C. § 2023(a)(15). Section 2025(c) relates to administrative cost-sharing and quality control aspects of SNAP and is not the basis for any claim in this case.

5

"The trial *de novo* provision of the Act 'is clearly broader than the review standard provided for under the Administrative Procedure Act. It requires the district court to examine the entire range of issues raised, and not merely to determine whether the administrative findings are supported by substantial evidence.'" *Affum v. United States*, 566 F.3d 1150, 1160 (D.C. Cir. 2009) (quoting *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975)). The requirement to determine the validity of the challenged administrative action by a trial de novo is not limited to cases in which the plaintiff challenges the USDA's determination that a trafficking violation occurred. *See Affum*, 566 F.3d at 1160 ("There is nothing in the Act to suggest that trials *de novo* relating to 'administrative action[s]' in issue are limited solely to review of determinations that a trafficking violation occurred."). "Reading the statute as a whole, it is inescapable that the trial court is required to conduct a trial *de novo* in all regulatory enforcement cases involving charges of trafficking violations." *Id.* That includes cases in which the only decision challenged is the Secretary's choice of sanction. *See id.*

In the Tenth Circuit, it is well established that a challenge to the Secretary's choice of sanction for a SNAP violation is reviewed via a trial de novo. *See Haskell v. U.S. Dep't of Agric.*, 930 F.2d 816, 820 n.5 (10th Cir. 1991) ("A store owner who disagrees with the Secretary's decision to impose penalties for food stamp violations may seek de novo review in the United States District Court."); *Joudeh v. United States*, 783 F.2d 176, 177–78 (10th Cir. 1986) (noting that in a case involving a challenge only to the Secretary's imposition of a sanction, the district court held a "de novo trial" under 7 U.S.C. § 2023); *Wolf v. United States*, 662 F.2d 676, 677 (10th Cir. 1981) (observing that in a case brought under 7 U.S.C. § 2023 to challenge the imposition of a six-month disqualification, "the trial de novo determined the validity of the administrative action"). Importantly, the applicable *standard* of review must not be confused or conflated with the proper

*scope* of the district court's review. That the district court is reviewing the Secretary's discretionary choice of sanction does not control whether its review proceeds by a trial de novo or on the administrative record. *See Affum*, 566 F.3d at 1160 (discussing the distinction between a "trial de novo" and "*de novo* review").

By the plain language of 7 U.S.C. § 2023, Congress has afforded plaintiffs, who are challenging the Secretary's decision to impose a sanction of permanent disqualification rather than a CMP, the opportunity to make anew their case regarding their eligibility for a CMP. Undoubtedly, the plaintiff, as the party seeking judicial review, "has the burden of proving facts to establish that he was entitled to relief from the disqualification determination, and must establish the invalidity of the agency action by a preponderance of the evidence." *Modica*, 518 F.2d at 376 (citing *Redmond v. United States*, 507 F.2d 1007, 1011–12 (5th Cir. 1975)). But a trial de novo allows the plaintiff to meet its burden after having the opportunity to discover and submit additional evidence to supplement an administrative record that may not contain all the relevant facts necessary to a decision. *See Affum*, 566 F.3d at 1160 (explaining that in a review by trial de novo, "the plaintiff may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency" (quotation marks and citation omitted)); *cf. Carreathers v. Alexander*, 587 F.2d 1046, 1049 (10th Cir. 1978) (explaining, in the context of a Title VII employment discrimination claim, that "[t]he purpose of a trial de novo is to aid the employee in discovering and presenting evidence in aid of his claim of discrimination" and that "[t]he law thus recognizes that the administrative record may not have developed all of the relevant facts").

When a case proceeds by a trial de novo, the district court must be able to make its own factual findings and reach its own legal conclusions on the de novo record. *See Freedman v. U.S.*

*Dep't of Agric.*, 926 F.2d 252, 261 (3d Cir. 1991) (explaining that "[t]he court must reach its own factual and legal conclusions and is not limited to matters considered in the administrative proceedings"); *see also Joudeh*, 783 F.2d at 179–80 (quoting at length the district court's legal analysis and conclusion regarding the penalty imposed in that case, a conclusion that was premised on, *inter alia*, the district court's factual findings regarding the store owner's absenteeism and lack of supervision). The district court is, after all, charged with conducting a trial where there was no trial, or an acceptable equivalent, in the first instance. *See Ghattas v. United States*, 40 F.3d 281, 286 (8th Cir. 1994) (explaining that "[t]he food stamp program statute does not require FNS to hold an adjudicatory hearing before permanently disqualifying a store" and observing that "[a]s is often the case when it authorizes informal agency action, Congress has provided for a heightened standard of judicial review"). In this way, a suit brought under 7 U.S.C. § 2023 closely resembles a traditional civil action and should proceed accordingly. *See Affum*, 566 F.3d at 1160–61.

## DISCUSSION

The parties have not proceeded in accordance with the applicable procedures and standards governing cases brought under 7 U.S.C. § 2023. From the outset, the United States has contended—incorrectly—that this case should be governed by the procedure described in *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994), a case brought under the Administrative Procedure Act ("APA"), i.e., treated as an appeal and decided on the administrative record under a deferential standard of review. *See* THE UNITED STATES' RESPONSE TO PLAINTIFFS' COMPLAINT (DOC. 1), Doc. 10 at ¶¶ 5, 10, 11. According to the United States, "a complaint is an improper vehicle for seeking review of a federal agency action in federal district court[,]" and "Plaintiffs' Complaint should be treated as a 'Petition for Review of Agency Action,' to which no 'Answer' is required under the Federal Rules of Civil Procedure, which are

inapplicable." *Id.* at ¶ 10. Although the United States acknowledged that this case is not an action under the APA, *see* Doc. 13 at 6, it nevertheless has insisted that "the correct procedure for going forward is for the United States to compile and lodge the Administrative Record for the challenged agency action and for briefing on the merits of Plaintiffs' appeal." Doc. 10 at ¶ 13; *see* Doc. 13 at 6.

Plaintiffs appeared to disagree, at least initially. *See* Doc. 13 at 5. Stating that they needed discovery and wished to take at least two depositions, Plaintiffs proposed to proceed under a six-month discovery track and indicated that they intended to file a motion for summary judgment if it were determined that *Olenhouse* was not controlling. *See id.* at 5, 7. At the Rule 16 initial scheduling conference, though, when Chief Magistrate Judge Carmen Garza noted the parties' dispute regarding the proper procedure to be used in this case and offered to set an expedited briefing schedule on the issue, counsel for Plaintiffs "responded that he believed the parties could work together to facilitate discovery and briefing would not be necessary." *See* CLERK'S MINUTES, Doc. 15. Over no objection or request for clarification by either party regarding the nature and scope of these proceedings, Judge Garza proceeded to set an appellate-style briefing schedule "for Plaintiff[s] to challenge the Administrative Agency's decision." *Id.* Plaintiffs were ordered to file a "Motion challenging the Administrative Agency's decision with Supporting Memorandum" by June 1, 2020, with the United States to file a "Response" by July 1, 2020, and Plaintiffs to file a "Reply" by July 15, 2020. *See* ORDER SETTING BRIEFING SCHEDULE, Doc. 16. The parties' briefs, filed in accordance with an extension of that briefing schedule, *see* ORDER GRANTING PLAINITFF'S [sic] UNOPPOSED MOTION FOR EXTENSION, Doc. 19, are the documents currently before the Court for review. *See* Docs. 20, 21, 22, 25.

After reviewing the parties' arguments, the record, and the applicable law, the Court has reached the ineluctable conclusion that this case has been proceeding improperly. This case is not controlled by the procedures described in or subject to the limited scope of review that applied in *Olenhouse*[5] and should not be proceeding as an administrative appeal on an order for briefing on the merits. Rather, this suit, brought under 7 U.S.C. § 2023(a)(15), must proceed by a trial de novo in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules of Civil Procedure.

Proceeding by a trial de novo means that the Court must be able to make its own factual findings—on a de novo record—and reach its own legal conclusions regarding the validity of the Secretary's challenged action. Determining the validity of the Secretary's decision to permanently disqualify Yoya's rather than impose a CMP is a fact-intensive undertaking that is neither simple nor straightforward. At the heart of this case is a dispute regarding whether Yoya's was eligible to receive a CMP in lieu of permanent disqualification. The Secretary found that Yoya's was not; Yoya's contends that it was. Resolution of this dispute requires the Court to make factual findings about what the evidence shows regarding whether Yoya's had an effective compliance policy and training program in effect to prevent violations prior to their occurrence in 2018. That, in turn, requires the Court to (1) construe a statutory provision and associated regulations that one court has called "confused and poorly drafted," *Affum*, 566 F.3d at 1164, (2) apply them to the evidence contained in a yet-to-be-developed de novo record, and (3) ultimately determine whether the evidence demonstrates that Yoya's is eligible for the lesser sanction that Congress has made

---

[5] *Olenhouse* involved a case brought by a class of Kansas farmers who were appealing from a decision by the Agricultural Stabilization and Conservation Service under the APA. *See* 42 F.3d at 1572. The Tenth Circuit held that the district court, which relied on arguments, documents, and evidence outside the administrative record, erred by failing to act as an appellate court and limit its review to the administrative record. *See id.* at 1579–80. *Olenhouse* is clearly distinguishable and, indeed, teaches that a district court errs by failing to review a challenge to administrative action under the scope and standard of review provided for by Congress.

available in a specific circumstance.[6] Neither party has, as yet, enabled the Court to carry out its review and to render a determination regarding the validity of the Secretary's action.

To be sure, the requirement for a trial de novo does not mean that the Court must conduct a trial to dispose of this case. "[T]he statutory requirement of a trial *de novo* is compatible with summary judgment if there are no material facts in dispute." *Affum*, 566 F.3d at 1160 (quotation marks and citation omitted). But as in any civil case, if a party seeks judgment as a matter of law in a case brought under 7 U.S.C. § 2023 it bears the burden of demonstrating that there are no material facts in dispute and must do so in conformance with the standards and requirements set forth in both the Federal Rules of Civil Procedure and applicable local rules. *See* Fed. R. Civ. P. 56; D.N.M.LR-Civ. 56.1; *Mehrab No. 1 Corp. v. United States*, 837 F. Supp. 2d 943, 946, 949 (N.D. Ill. 2011) (denying the United States' motion for summary judgment where the district court found that there was a genuine issue of material fact regarding whether the plaintiff grocery store was eligible for a CMP). Neither party has met this burden or otherwise demonstrated that it is entitled to judgment in its favor at this time.

For the reasons explained, the Court concludes that this case must be redirected as described herein and set forth below so that it will be decided on a properly developed record and on properly advanced arguments made under the applicable legal standards.

IT IS THEREFORE ORDERED THAT:

1. Plaintiffs' NOTICE OF MOTION, Doc. 20, and accompanying MEMORANDUM OF LAW, POINTS AND AUTHORITIES, Doc. 21, is DENIED WITHOUT PREJUDICE.

---

[6] To the extent the Secretary's decision in this case involved construction and application of its regulations in determining whether Yoya's demonstrated its eligibility for a CMP, the Court makes no presumption regarding whether any deference is owed to the agency's interpretation of its regulations. *See Kisor v. Wilkie*, --- U.S. ----, 139 S.Ct. 2400, 2414–18 (2019) (noting that "*Auer* deference is not the answer to every question of interpreting an agency's rules" and reviewing the "limits inherent in the *Auer* doctrine").

2. This case must proceed by a trial de novo in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules of Civil Procedure.

3. The United States may file an amended Answer to Plaintiffs' Complaint by January 19, 2021.

4. The parties must meet-and-confer by January 26, 2021 and must file an amended joint status report and provisional discovery plan by February 2, 2021. The Court will then hold a scheduling conference and enter a scheduling order that, at a minimum, sets deadlines for amending the pleadings, completing discovery, and filing motions. *See* Fed. R. Civ. P. 16(b).

_____
SENIOR UNITED STATES DISTRICT JUDGE